The Chancellor.
This bill is filed upon a mortgage given by the New Jersey Oil Company to the complainant. Tire other defendants are made parties to the suit, by reason of their claiming liens upon the mortgaged premises. The difficulties all arise in reference to the validity of the complainant’s mortgage, and as to its priority over the liens set up by the defendants. The New Jersey Oil Company and Jeremiah S. Dunce & Co. have put in separate answers to the "bill. Doth answers make the same issues with the complainant.
The first objection made against the complainant’s mortgage is that it is usurious. There are two distinct *50 grounds upon which the alleged usury is sought to be maintained.
One is, that the mortgage, upon its face, secures more than the legal rate of interest. This is so; but it is evidently a mistake. The mortgage refers to the bond, the payment of which it is given to secure. It recites the bond as conditioned for the payment of ten thousand dollars, with interest thereon at and after the rate of seven per cent, per annum. The bond is produced. It draws six per cent, interest only. The mistake is accounted for from the fact, that the mortgage was drawn by a scrivener in the city of New York. A printed form of mortgage, such as conforms to the laws of New York, was used, and this gave rise to the mistake. The mistake is further apparent from a recital in an agreement, made between the same parties, bearing the same date with the bond and mortgage, and being a part of the same transaction. The mortgage is there recited as given to secure the sum of ten thousand dollars, with legal interest at and after the rate of six per cent. Besides this, it is proved by a witness who negotiated the loan, that the contract was for six per cent, interest.
Another ground of the alleged usury is, that a bonus of fifty shares of stock of the New Jersey Oil Company was given as part consideration for the loan, and an engagement exacted of the company to pay the complainant a salary at the rate of two thousand dollars a year. This objection has given me much trouble; and it is not without considerable difficulty that I have arrived at the conclusion not to sustain the objection. The papers themselves, which explain the transaction between the parties, make a very strong impression upon the mind, that the agreement to engage the complainant’s services at a salary of two thousand dollars a year, and to give him the stock as a bonus for his services in carrying out certain objects in view of the parties, were only devices to cover up a usurious contract. By the agreement, the salary and bonus *51 were to be given as a compensation for the services of the complainant, and the mortgage was given in part to secure tbe salary. At the time of the loan, the company was in straightened circumstances, and must at the time have yielded to the fate of an insolvent company, had it not have been for the pecuniary assistance afforded them by the complainant. The fact that, under such circumstances, the company should agree with the man who advanced the money for their relief, and at the time of making the loan, engaged his services at a high price, and gave Mm an additional bonus for his services, required some explanation to relieve the transaction from the strong presumption of usury. The fact that, by the written agreement of the parties, the salary and the bonus were to be given as the consideration for the services of the complainant, would not weigh a feather with the court, if it were apparent that this was a contrivance between the parties, by which more than the legal rate of interest was to be secured to the lender. If the complainant exacted of the company, as part of the consideration of the loan, that the company should employ Mm at an exorbitant price, when Ms services were not needed, and were not in fact to bo rendered, the contract was usurious. The complainant has given some explanation, independent of the documentary evidence.
The testimony of Holmes and Jenkins, who appear to have been the agents of the company in negotiating with the complainant for the loan, is relied upon, as well as the proof of services actually rendered by the complainant, as compensation for the bonus and the amount agreed upon as a salary, to relieve the transaction from the unfavorable appearances which attach to it, as far as the papers which passed between the parties are concerned.
The inclination of the testimony of Holmes and Jenkins is to establish that the agreement for the salary and the bonus was entirely distinct from the loan of the money. I say the inclination of their testimony, because these wit *52 nesses do not put the matter beyond doubt, and neither of- them ventures to say that the complainant’s services would have been engaged without his undertaking and agreement to furnish the money. There is proof, however, that the services of the 'complainant were rendered, and were valuable to the company. He superintended the company’s works, and by his energy and perseverance they were completed. He'was a practical mechanic, and, as superintendent, discharged all the duties incumbent on him in that capacity. There is conflicting evidence as to his capacity in certain particulars, but as to his general efficiency there is no question. The testimony taken is voluminous, and I do not think it necessary to refer to it in detail. My conclusion is, after much hesitancy, not to permit the defence of usury to prevail.
The mortgage is further objected to, on the ground that at the time of its execution the debt due was only $1243.90, and the residue was for future advances; that this does not appear upon the face of the mortgage, but on the contrary, the mortgage declares that the debt then due was ten thousand dollars. It is insisted that a mortgage under such circumstances is not valid, because it is a fraud upon creditors.
This is not a new question. It has been much discussed, and has been frequently reviewed by the courts. Such a mortgage was sustained in the case of Craig v. Tappen, 2 Sand. Ch. Rep. 78. Numerous authorities are there cited and reviewed. The court said, “ it is no longer a question, that mortgages to secure future advances are good to the extent secured thereby;” and further declared, that it is not necessary that the intention should be expressed in the mortgage. The authorities settle the question, and I am not disposed to disturb them. And yet it appears to me there are very weighty objections to a mortgage to secure future advances, unless it is so expressed on the face of the mortgage. The instrument declares, under the seal of the party, that the debt is actually due. It is placed on *53 the record as an encumbrance, for the whole amount, on the debtor’s property. Why should not the mortgage declare the true consideration for which it has been executed? It may operate greatly to the prejudice of creditors. It does deceive and mislead them when they apply to the records for the purpose of ascertaining the condition of their debtor’s property. They find it encumbered for more than its value, and the encumbrance stands there to enable the debtor to obtain money which ought to go to pay his debts already contracted. It was said by the Assistant Vice Chancellor, in the case of Craig v. Tappen, that the record would not in any case afford the creditor any certainty, and that he may make application to the mortgagee to ascertain whether all or how much of the money is due. But the mortgagee may not be easy of access, and the creditor not be able to avail himself of the necessary information. He finds an encumbrance on record for as much as the debtor’s property is worth, and thinks it useless to take legal means to secure his debt; whereas, if the mortgage had truly expressed the debt actually due, the creditor might have secured his debt. It is calculated to put a creditor off' his guard — it is calculated to mislead him, and is therefore objectionable. He is misled by the party’s executing a paper which is false upon its face, and placing it upon record as notice of what is due. At all events, it appears to me to be of doubtful policy to encourage such securities. If the transaction is an honest one, let the parties place the truth upon the record. It is unnecessary to speculate how it may work mischief. It ought to be condemned, when it is ascertained that, instead of expressing the true, it gives a false consideration upon its face. Notwithstanding all the arguments I have seen advanced in support of such a mortgage, I would not give it my judicial sanction if the question were newly presented. But as I stated, the authorities are in favor of the validity of such mortgages, and they are such as I feel bound to follow.
*54 There is another consideration involved in the character of this mortgage. How does it affect subsequent mortgage and judgment creditors ? This mortgage is dated the first of December, 1853. Bunce & Co. obtained their judgment, on the 21st of March following, for the sum of $3021.67, and on the same day issued execution upon it. On the day following, the complainant had notice of the judgment. This judgment has priority over the complainant’s mortgage as to all advances made after the entry of the judgment. A judgment or mortgage, subsequent to a mortgage given to secure future advances, has priority over all advances made subsequent to the existence of such liens. Craig v. Tappen, 2 Sand. Ch. Rep. 78; Brinkerhoof v. Marvin, 5 J. C. Rep. 326.
There must be a reference to a master to take the accounts. In taking the accounts, the master will take the sum of $1243.90, as due to the complainant at the time of the execution of his mortgage. The complainant must prove what advances, if any, were made prior to the date of the encumbrances set up by the defendants, and as to such advances, the complainant will be entitled to priority; as to other advances, he must be postponed in payment. The master must require proof of all advances made by the complainant upon his mortgage. The alleged settlements between the complainant and the company were sufficiently impeached to justify the court in requiring the complainant to make proof before the master.